IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

PRESTON JOHNSON and
ELIZABETH JONES                                                            PLAINTIFFS

v.                              No. 3:24CV00026 JM

ACTIVISION BLIZZARD, INC.;
INFINITY WARD, INC.;
TREYARCH CORP.; SLEDGEHAMMER
GAMES, INC.; EPIC GAMES, INC.;
ROBLOX CORP.; ROCKSTAR GAMES, INC.;
ROCKSTAR NORTH LIMITED;
TAKE-TWO INTERACTIVE SOFTWARE, INC.;
GOOGLE LLC; and JANE & JOHN DOES I-XX                                      DEFENDANTS

**ORDER**

Pending is the motion to compel arbitration filed on behalf of Defendants Activision Blizzard, Inc., Infinity Ward, Inc., Treyarch Corp. and Sledgehammer Games, Inc. (collectively "Activision" or the "Activision Defendants"). (Docket #93). Plaintiffs have filed a response, the Activision Defendants have filed a reply and a notice of supplemental authority.

I.  Background

Plaintiffs, Preston Johnson and Elizabeth Jones filed suit against the Activision Defendants and others due to alleged harm experienced by Preston, including video game addiction (also called internet gaming disorder) and brain damage, resulting from his use of various video game products. The Activision Defendants developed the video game franchise Call of Duty.

II. Discussion

Activision argues that Plaintiffs' claims should be compelled to arbitration. In order to

play any Call of Duty game, Activision requires a player to affirmatively agree to the Terms of Use and End User License Agreement, ("EULA").  Activision contends that the agreement contains a binding arbitration provision and an agreement to delegate issues of arbitrability to an arbitrator.  Plaintiffs admit that Activision requires users to agree to the Terms of Use and EULA in order to play Call of Duty.  Plaintiffs do not dispute that Preston has an Activision Call of Duty account but argue that Preston created this account when he was a minor, without his parent's input or knowledge and Preston affirmatively disaffirms any agreements he may have entered. However, Johnson admits that as a minor, if he wanted to play a game or was playing a game and a screen popped up that required him to "click it" to keep playing he would click the box to keep playing.  See Plaintiffs' affidavits ECF No. 117-1 and 117-2.   Accordingly, Plaintiffs argue that there is not a valid agreement to arbitrate.

      The Activision Terms of Use and EULA state that by playing the game, the user agrees to the Terms of Use and EULA.  Players affirmatively agree to the Terms of Use and EULA by creating an Activision and/or Call of Duty account. Players can create an Activision and/or Call of Duty account within the Call of Duty games or on Activision's website.  To create an Activision account within a Call of Duty game, a user must enter a valid email address, a password, and their country of residence. Next, the user is required to scroll through Activision's Terms of Use and EULA and click "ACCEPT," and scroll through Activision's Privacy Policy and click "ACKNOWLEDGE".  If a user creates an Activision account through the Activision website, they must also provide their name, user ID, date of birth, country of residence, and, optionally, phone number. Users must also check a box that states, "By checking the box, I accept Activision's TERMS OF USE and acknowledge having read its PRIVACY POLICY.  The Terms of Use and privacy policy terms are highlighted in red and include hyperlinks to Activision's Terms of Use

2

and Privacy Policy. If a user does not accept the Terms of Use and EULA, they are unable to create an account.

After creating an Activision and/or Call of Duty account, the first time a player plays any individual Call of Duty game, they must scroll through and "accept" the Terms of Use and EULA before they can proceed to play. When Activision updates the Terms of Use or EULA players must agree to the updated terms the next time they play a particular Call of Duty game.

The introductory language of both the Terms of Use and EULA provide notice of the arbitration agreement stating in all capital letters: "IMPORTANT NOTICE . . . . THIS AGREEMENT IS SUBJECT TO BINDING ARBITRATION AND A WAIVER OF CLASS ACTION RIGHTS."   The Terms of Use identify the arbitration provisions in § 4, and the EULA identifies the arbitration provisions in §16.

The arbitration provisions within the Terms of Use and EULA begin with identical language in all capital letters stating:

> READ THIS SECTION CAREFULLY. IT MAY SIGNIFICANTLY AFFECT YOUR LEGAL RIGHTS, INCLUDING WAIVING YOUR RIGHT TO FILE A LAWSUIT IN COURT OR TO PURSUE CLAIMS IN A CLASS OR REPRESENTATIVE CAPACITY.
>
> These BINDING ARBITRATION AND CLASS ACTION WAIVER provisions apply to you if you are domiciled in and/or acquired and use the Product in the United States. In the United States, this Agreement is governed by the Federal Arbitration Act ("FAA") and federal arbitration law.

The arbitration agreement in the Terms of Use and EULA applies broadly. It states: "To the fullest extent allowed by applicable law, you and Activision agree to submit all Disputes between us to individual, binding arbitration pursuant to the provisions in this Section, and defines "Dispute" as meaning "any dispute, claim, or controversy . . . between you and Activision that in any way relates to or arises from any aspect of our relationship, including, without limitation, your

use or attempted use of the Product, all marketing related to the Product, all Services, Service Provided Content, and Virtual Currency, any licensed content, and all matters relating to or arising from this Agreement (including Activision's Privacy Policy and all other terms incorporated into this Agreement) or any other agreement between you and Activision, including any disputes over the validity or enforceability of this agreement to arbitrate."

The arbitration agreement also has a delegation provision that states the following:

> The arbitrator shall determine the scope and enforceability of this arbitration agreement, including whether a Dispute is subject to arbitration. The arbitrator has authority to decide all issues of validity, enforceability or arbitrability, including, but not limited to, where a party raises as a defense to arbitration that the claims in question are exempted from the arbitration requirement or that any portion of this agreement is not enforceable.

Under the Terms of Use, minor users of Activision's services cannot create Activision or Call of Duty accounts without parental consent. Activision's Terms of Use state:

> If you are aged 13 but under 18 years of age, you and your parent or guardian must review this Agreement and the Privacy Policy together. Parents/guardians are jointly and severally liable for all acts (including purchases and payments for Service Provided Content) and omissions of their children aged under 18 years when using a Product. Activision recommends that parents and guardians familiarize themselves with parental controls available on Devices they provide to their child and accompany their child if aged under 13 years of age, or the applicable age in your jurisdiction, when online.

Further, the Terms of Use and EULA state: "[Y]ou may establish an Activision account only if (i) you are 18 years of age and a 'natural person' in your country of residence, or (ii) if your parent or guardian reads and accepts the terms of this Agreement and the Activision Privacy Policy on their and your behalf if you are age 13 or over but under 18 years of age. . . . By accepting this Agreement, you hereby represent and warrant that you meet these eligibility requirements." Further, parents and guardians "agree that [they] will be responsible for all uses of the account by your child whether or not such uses were authorized by you."

Johnson does not dispute that he created an Activision and/or Call of Duty account and began playing Call of Duty in January 2020 when he was 17 years old. To create the account, Johnson either would have scrolled through the Terms of Use and EULA and clicked "ACCEPT" (if created through the game) or affirmatively checked the box assenting to the Terms of Use (if created through the website). Johnson concedes that when faced with a "click-it" screen, he would click it. Johnson's account has played multiple Call of Duty titles over time and as recently as December 2023. To play each Call of Duty title, after creating an account, Plaintiffs would have been required to scroll through the Terms of Use and EULA and clicked "ACCEPT" assenting to the terms. Additionally, in order to continue to play the Call of Duty titles after any updates to the Terms of Use or EULA, Johnson would have been required to accept the updated Terms of Use or EULA by clicking "ACCEPT". Pursuant to the Terms of Use and EULA Johnson would have been allowed to opt out of the arbitration agreement by sending an email to Activision's legal department within thirty days from the purchase or account creation. Plaintiffs did not opt out.

Plaintiffs challenge Activision's motion to compel arbitration arguing that it does not have a valid, enforceable arbitration agreement with Plaintiffs Preston Johnson or Elizabeth Jones. Additionally, even if an agreement existed, Plaintiffs argue that it would not be enforceable because the arbitration clause is unconscionable. Finally, Plaintiffs contend that this Court should consider their arguments regarding the enforceability of the arbitration provision because the delegation clause cannot apply until there is a finding of a valid, enforceable contract.

If there is an arbitration agreement governing the parties' dispute, it is governed by the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1 et seq. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including "the construction of the contract language itself." *PRM Energy Sys., Inc. v.*

*Primenergy, L.L.C.*, 592 F.3d 830, 836 (8th Cir. 2010) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983). Nevertheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 83 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co*., 363 U.S. 574, 582, (1960)). "When deciding whether the parties agreed to arbitrate a certain matter ..., courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *Hudson v. ConAgra Poultry Co*., 484 F.3d 496, 500 (8th Cir. 2007) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The Court will apply Arkansas law to the question of whether a contract exists.

"[T]he essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation." *Alltel Corp. v. Sumner*, 203 S.W.3d 77, 79 (Ark. 2005). "A threshold inquiry is whether an agreement to arbitrate exists; that is, whether there has been mutual agreement, with notice as to the terms and subsequent assent. We keep in mind two legal principles when deciding whether a valid contract was entered into: (1) a court cannot make a contract for the parties but can only construe and enforce the contract that they have made; and if there is no meeting of the minds, there is no contract; and (2) it is well settled that in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators." *Id.* at 80 (citing *Williamson v. Sanofi Winthrop Pharm., Inc*., 60 S.W.3d 428 (Ark. 2001).

The online contracts like the one at issue here are treated no differently than any other contract. *See, Leeper v. Altice U.S.A., Inc*, 722 F. Supp.3d 893 (W.D. Ark. 2024). Further, Courts applying Arkansas law routinely find "clickwrap" agreements valid and enforceable. *See Holley v. Bitesquad.com LLC*, 416 F. Supp. 3d 809, 821 & n.1 (E.D. Ark. 2019) ("A

6

clickwrap agreement is an assent process where a user is required to click "I agree" before completing a purchase but is not required to actually view or scroll through the contract or terms and conditions."). In Arkansas minors can enter into contracts and those agreements are "not void but voidable." *Haydon v. Hillhouse*, 270 S.W.2d 910, 911 (Ark. 1954). Finally, competence is presumed and the burden of proving incompetence is with the Plaintiffs. *See Union Nat'l Bank of Little Rock v. Smith,* 240 Ark. 354, 356, 400 S.W.2d 652, 653 (1966) ("There is a presumption of law that every person is sane, fully competent, and capable of understanding the nature and effect of her contracts.").

When considering a motion to compel arbitration, "the district court treats the motion akin to a motion for summary judgment, viewing the record in the light most favorable to the nonmovant." *Duncan v. Int'l Markets Live, Inc.,* 20 F.4th 400, 403 (8th Cir. 2021). The Court's "task in this case to determine whether [the parties] had an agreement to arbitrate and, if so, what that agreement covered." *See Foster v. Walmart, Inc.,* 15 F.4th 860, 862 (8th Cir. 2021). The FAA provides for a summary-trial procedure only where the existence of an arbitration agreement is factually disputed. 9 U.S.C. §4 (If the making of the arbitration agreement is in issue, "the court shall proceed summarily to the trial thereof."). Here the existence of the arbitration agreement is not factually disputed, there is no genuine issue of fact as to the making of the contract.

Johnson does not dispute that he created the account. Plaintiffs argue that the agreement is not valid because Johnson lacked the capacity and competency to manifest assent and Elizabeth Jones never assented to or accepted the EULA. Alternatively, they argue the contract is unconscionable. Because Johnson's contract is voidable, not void under Arkansas law, Johnson's infancy and alleged lack of competency do not nullify his agreement. Further,

because of the EULA's broad delegation clause, the plaintiffs' contract enforceability challenges including the disaffirmation of the agreement go to an arbitrator. *See Rent-A-Center v. Jackson,* 561 U.S. 63 (2010). "The Supreme Court has made clear that 'unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.'" *Benchmark Ins. Co. v. SUNZ Ins. Co.,* 36 F.4th 766, 772 (8th Cir. 2022) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006)).

Plaintiff Elizabeth Jones is bound by the EULA under the doctrine of apparent authority. Johnson created the account representing that if he was age 13 but under 18 years of age, his parent or guardian had reviewed the terms of use and the privacy policy and consented to the agreement. Johnson concedes that when faced with a screen that required him to "click-it" he would do so. Johnson agreed to the EULA which contained an arbitration agreement that covers this dispute and by agreeing to the EULA Johnson represented to the Activision Defendants that he had his parent's consent. "Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing, such authority as he appears to have by reason of the actual authority which he has, such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess." *Terra Land Servs., Inc. v. McIntyre*, 2019 Ark. App. 118, 15, 572 S.W.3d 424, 433 (2019). Here, the Activision Defendants were justified in believing that the user of the accounts possessed the authority to agree to the EULA. There was no reason for the Activision Defendants to question whether the user of the account was anyone other than Johnson who was either over the age of 18 or was acting with the consent of his parent or guardian. *See Heidbreder v. Epic*

*Games, Inc.*, 438 F. Supp. 3rd 591(E.D.N.C. 2020) (finding no genuine issue of material fact as to the apparent authority of the minor child to bind his parent where the account was personalized and associated with specific names and e-mail addresses). *See also, B.D. v. Blizzard Ent.*, 76 Cal. App. 5th 931, 935(2022).

The Court finds that a valid arbitration agreement exists and the Plaintiffs claims fall within the substantive scope of the arbitration agreement.

III.   Conclusion

For these reasons, the Court finds that the Activision Defendants' motion to compel arbitration must be granted. The case is stayed as to Plaintiffs' claims against the Activision Defendants pending the completion of arbitration.

IT IS SO ORDERED this 18th day of February, 2025.

                                          James M. Moody Jr.
                                          United States District Judge