IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

PRESTON JOHNSON and
ELIZABETH JONES                                                                    PLAINTIFFS

v.                              No. 3:24CV00026 JM

ACTIVISION BLIZZARD, INC.;
INFINITY WARD, INC.;
TREYARCH CORP.; SLEDGEHAMMER
GAMES, INC.; EPIC GAMES, INC.;
ROBLOX CORP.; ROCKSTAR GAMES, INC.;
ROCKSTAR NORTH LIMITED;
TAKE-TWO INTERACTIVE SOFTWARE, INC.;
and JANE & JOHN DOES I-XX                                                        DEFENDANTS

**ORDER**

Pending is the motion to compel arbitration filed on behalf of Defendant Epic Games, Inc. ("Epic Games"). (Docket #96). Plaintiffs have filed a response and Epic Games has filed a reply and notice of supplemental authority.

I.   Background

Plaintiffs Preston Johnson and Elizabeth Jones filed suit against Epic Games and others due to alleged harm experienced by Johnson, including video game addiction (also called internet gaming disorder) and brain damage, resulting from his use of Defendants' video game products. Epic Games is the developer and publisher of the Fortnite video game franchise.

II.   Discussion

Epic Games argues that Johnson's claims should be compelled to arbitration. Epic Games asserts that since the launch of Fortnite in July 2017 all users have been required to affirmatively agree to the Fortnite End User License Agreement, ("EULA") and that agreement contains a

binding arbitration provision and an agreement to delegate issues of arbitrability to an arbitrator. Plaintiffs admit that Epic Games requires users to agree to the EULA in order to play Fortnite. Further, Plaintiffs do not dispute that Johnson has a Fortnite account but argue that Johnson created this account when he was a minor, without his parent's input or knowledge and Johnson affirmatively disaffirms any agreements he may have entered.  However, Johnson also admits that as a minor, if he wanted to play a game or was playing a game and a screen popped up that required him to "click it" to keep playing he would click the box to keep playing.  Further, Johnson admits that after attaining the age of majority and filing this lawsuit, he again agreed to the terms and conditions to continue playing.  (See Plaintiff's affidavit ECF 117-1).  Plaintiffs argue that there is not a valid agreement to arbitrate.

      The EULA is displayed on-screen after a player downloads the Fortnite software and notifies those considering whether to agree to the EULA that it contains a binding arbitration clause. The introduction to the EULA "highlight[s]" three "important terms, policies, and procedures," including that:

> You and Epic agree to resolve disputes between us in individual arbitration (not in court). We believe the alternative dispute-resolution process of arbitration will resolve any dispute fairly and more quickly and efficiently than formal court litigation. Section 12 explains the process in detail. We've put this up front (and in caps) because it's important.

The notice then reiterates, in bolded, capitalized type:

> THIS AGREEMENT CONTAINS A BINDING, INDIVIDUAL ARBITRATION AND CLASS-ACTION WAIVER PROVISION. IF YOU ACCEPT THIS AGREEMENT, YOU AND EPIC AGREE TO RESOLVE DISPUTES IN BINDING, INDIVIDUAL ARBITRATION AND GIVE UP THE RIGHT TO GO TO COURT INDIVIDUALLY OR AS PART OF A CLASS ACTION, AND EPIC AGREES TO PAY YOUR ARBITRATION COSTS FOR ALL DISPUTES OF UP TO $10,000 THAT ARE MADE IN GOOD FAITH (SEE SECTION 12). YOU HAVE A TIME-LIMITED RIGHT TO OPT OUT OF

THIS WAIVER.

Additionally, the intro to the EULA states in all caps: "IF YOU ARE UNDER THE LEGAL AGE OF MAJORITY, YOUR PARENT OR LEGAL GUARDIAN MUST CONSENT TO THIS AGREEMENT." Before the user can begin to play the game the user must affirmatively accept the EULA. Users may scroll through the EULA before deciding whether to accept or reject its terms. To accept the EULA users must click an "accept" button by physically pressing the keyboard of the console controller. The user can also "decline" to agree to the EULA by clicking the "decline" button.

At all relevant times, the EULA included an arbitration agreement. Section 12.3.1 of the EULA provides:

> You and Epic agree to submit all Disputes between You and Epic to individual binding arbitration. "Dispute" means any dispute, claim, or controversy (except those specifically exempted below) between You and Epic that relates to your use or attempted use of Epic's products or services and Epic's products and services generally, including without limitation the validity, enforceability, or scope of this Binding Individual Arbitration section.
>
> You and Epic agree to arbitrate all Disputes regardless of whether the Dispute is based in contract, statute, regulation, ordinance, tort (including fraud, misrepresentation, fraudulent inducement, or negligence), or any other legal or equitable theory. . . .
>
> You and Epic agree that whether a dispute is subject to arbitration under this Agreement will be determined by the arbitrator rather than a court.

Users may opt out of the arbitration agreement by submitting a written notice to Epic within 30 days of the date on which they first accepted the EULA.

Johnson does not dispute that on January 29, 2018 he created a Fortnight account using his own gmail e-mail address. Epic's undisputed records reflect that contemporaneously with the creation of the Johnson account, the user of the Johnson Account affirmatively agreed to the

3

Fortnite EULA by pressing the "accept" button on a Microsoft Xbox console. Since that time the user of the Johnson Account has accepted the Fortnite EULA at least six times. No opt-out notification was submitted for the Johnson Account..

Plaintiffs challenge Epic Games' motion to compel arbitration arguing that it does not have a valid, enforceable arbitration agreement with them. Additionally, even if an agreement existed, Plaintiffs argue that it would not be enforceable because the arbitration clause is unconscionable. Finally, Plaintiffs contend that this Court should consider their arguments regarding the enforceability of the arbitration provision because the delegation clause cannot apply until there is a finding of a valid, enforceable contract.

If there is an arbitration agreement governing the parties' dispute, it is governed by the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1 et seq. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including "the construction of the contract language itself." *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 836 (8th Cir. 2010) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Nevertheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, (1960)). "When deciding whether the parties agreed to arbitrate a certain matter ..., courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *Hudson v. ConAgra Poultry Co*., 484 F.3d 496, 500 (8th Cir. 2007) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Epic argues that the EULA is governed by North Carolina law. However, North Carolina law and Arkansas law are consistent as to the question of whether a contract exists.

4

"[T]he essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation." *Alltel Corp. v. Sumner*, 203 S.W.3d 77, 79 (Ark. 2005), *accord Murray v. Deerfield Mobile Home Park, LLC*, 860 S.E.2nd 323, 329 (N.C. 2021).  "A threshold inquiry is whether an agreement to arbitrate exists; that is, whether there has been mutual agreement, with notice as to the terms and subsequent assent. We keep in mind two legal principles when deciding whether a valid contract was entered into: (1) a court cannot make a contract for the parties but can only construe and enforce the contract that they have made; and if there is no meeting of the minds, there is no contract; and (2) it is well settled that in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators." A*lltel Corp,* at 80 (citing *Williamson v. Sanofi Winthrop Pharm., Inc*., 60 S.W.3d 428 (Ark. 2001).

The online contracts like the one at issue here are treated no differently than any other contract.  *See, Leeper v. Altice U.S.A., Inc*, 722 F. Supp. 3d 893 (W.D. Ark. 2024). Further, Courts applying Arkansas law routinely find "clickwrap" agreements valid and enforceable. *See Holley v. Bitesquad.com LLC*, 416 F. Supp. 3d 809, 821 & n.1 (E.D. Ark. 2019) ("A clickwrap agreement is an assent process where a user is required to click "I agree" before completing a purchase but is not required to actually view or scroll through the contract or terms and conditions.").  In Arkansas minors can enter into contracts and those agreements are "not void but voidable." *Haydon v. Hillhouse*, 270 S.W.2d 910, 911 (Ark. 1954), *accord Chandler v. Jones*, 90 S.E. 580, 581 (N.C. 1916).  Finally, competence is presumed and the burden of proving incompetence is with the Plaintiffs. *See Union Nat'l Bank of Little Rock v. Smith,* 240 Ark. 354, 356, 400 S.W.2d 652, 653 (1966) ("There is a presumption of law that every person is sane, fully competent, and capable of understanding the nature and effect of her

5

contracts.").

When considering a motion to compel arbitration, "the district court treats the motion akin to a motion for summary judgment, viewing the record in the light most favorable to the nonmovant." *Duncan v. Int'l Markets Live, Inc.,* 20 F.4th 400, 403 (8th Cir. 2021). The Court's "task in this case to determine whether [the parties] had an agreement to arbitrate and, if so, what that agreement covered." *See Foster v. Walmart, Inc.,* 15 F.4th 860, 862 (8th Cir. 2021). The FAA provides for a summary-trial procedure only where the existence of an arbitration agreement is factually disputed. 9 U.S.C. §4 (If the making of the arbitration agreement is in issue, "the court shall proceed summarily to the trial thereof."). Here the existence of the arbitration agreement is not factually disputed, there is no genuine issue of fact as to the making of the contract.

Johnson does not dispute that he created the Fortnite Account, that he agreed to the EULA, or that he agreed to the EULA again after he attained the age of majority. Plaintiffs argue that the agreement is not valid because Johnson lacked the capacity and competency to manifest assent and Elizabeth Jones never assented to or accepted the EULA. Alternatively, they argue the contract is unconscionable. Because Johnson's contract is voidable, not void under Arkansas law, his infancy and alleged lack of competency do not nullify his agreement. Further, because of the EULA's broad delegation clause, the plaintiffs' contract enforceability challenges including Johnson's disaffirmation of the agreement go to an arbitrator. *See Rent-A-Center v. Jackson,* 561 U.S. 63 (2010). "The Supreme Court has made clear that 'unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.'" *Benchmark Ins. Co. v. SUNZ Ins. Co.,* 36 F.4th 766, 772 (8th Cir. 2022) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46

(2006)).

The Court finds that a valid arbitration agreement exists and that Johnson's claims fall within the substantive scope of the arbitration agreement. Jones claims against Epic are stayed pending the completion of Johnson's arbitration.[1]

III.   Conclusion

For these reasons, the Court finds that Epic Games motion to compel arbitration must be granted. The case is stayed as to Plaintiffs' claims against Epic Games pending the completion of arbitration.

IT IS SO ORDERED this 3rd day of March, 2025.

                                                                               James M. Moody Jr.
                                                                               United States District Judge

---

[1] Epic does not move to compel Jones to arbitration.