IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

PRESTON JOHNSON and
ELIZABETH JONES                                                            PLAINTIFFS

v.                               No. 3:24CV00026 JM

ACTIVISION BLIZZARD, INC.;
INFINITY WARD, INC.;
TREYARCH CORP.; SLEDGEHAMMER
GAMES, INC.; EPIC GAMES, INC.;
ROBLOX CORP.; ROCKSTAR GAMES, INC.;
ROCKSTAR NORTH LIMITED;
TAKE-TWO INTERACTIVE SOFTWARE, INC.;
and JANE & JOHN DOES I-XX                                                  DEFENDANTS

**ORDER**

Pending is the motion to compel arbitration filed on behalf of Defendants Take-Two Interactive Software, Inc., Rockstar Games UK LTD., and Rockstar Games, Inc. (collectively, the "Rockstar Defendants"). (Docket #91). Plaintiffs have filed a response and the Rockstar Defendants have filed a reply and notice of supplemental authority.

I.   Background

Plaintiffs Preston Johnson and Elizabeth Jones filed suit against the Rockstar Defendants and others due to alleged harm experienced by Johnson, including video game addiction (also called internet gaming disorder) and brain damage, resulting from Johnson's use of Defendants' video game products. The Rockstar Defendants publish the Grand Theft Auto video game franchise.

II.   Discussion

The Rockstar Defendants argue that Plaintiffs' claims should be compelled to arbitration.

They assert that Johnson agreed to the terms of the Rockstar Defendants' End User License Agreement ("EULA") when accessing Grand Theft Auto V's online gameplay on January 10, 2020, and that agreement contains a binding arbitration provision and an agreement to delegate issues of arbitrability to an arbitrator.  Plaintiffs do not dispute that the Rockstar Defendants require users to agree to the EULA in order to play Grand Theft Auto.  Further, Plaintiffs do not dispute that Johnson began accessing Grand Theft Auto V on January 10, 2020 but argue that Johnson created this account when he was a minor, without his parent's input or knowledge and Johnson disaffirms any agreements he may have entered.  However, Johnson also admits that as a minor, if he wanted to play a game or was playing a game and a screen popped up that required him to "click it" to keep playing he would click the box to keep playing.  (See Plaintiff's affidavit ECF 117-1).  Plaintiffs argue that there is no valid agreement to arbitrate.

      Players of Grand Theft Auto V can accept the EULA in different ways.  When purchasing Grand Theft Auto V through Rockstar Games' direct-to-consumer channel, the player must first sign in to their Social Club account or create a new account with Rockstar Games.  Creating a Social Club account requires the player to accept the EULA.  Additionally, the player must agree to the EULA as part of the check-out flow to complete their purchase.  If purchasing Grand Theft Auto V on a console directly from Microsoft Xbox Store or the Sony PlayStation Store, the player must agree to the EULA as part of the check-out flow to complete their purchase.  On a PC, whether installed from a physical disc or via a digital download, the player must first download the Rockstar Games Launcher, a client-side application that manages Rockstar Games' products on a player's PC.  During the installation of the Rockstar Games Launcher, the player must first sign in to their Social Club account or create a new account, which requires that the player review and accept the EULA.  Installing the Rockstar Games Launcher and creating a Social Club account are

required in order for the player to complete the PC installation of Grand Theft Auto V and begin gameplay. In addition to accepting the EULA during purchase or when creating a Social Club account, players on a PC and console are also prompted to review and accept the EULA the first time that they attempt to join an online gameplay session for Grand Theft Auto V.

Before accepting the EULA, the player has the opportunity to review it and must check a box indicating that they read the EULA and accept its terms. Each time a player launches Grand Theft Auto V, a reminder of the EULA is displayed on the screen.

Plaintiffs contend that Johnson agreed to the EULA when he was a minor. The EULA specifically requires minors to obtain parental consent. The following provision, written in all caps appears at the beginning of the EULA:

> TO ENTER INTO THIS LICENSE AGREEMENT, YOU MUST BE AN ADULT OF THE LEGAL AGE OF MAJORITY IN YOUR COUNTRY OF RESIDENCE. YOU ARE LEGALLY AND FINANCIALLY RESPONSIBLE FOR ALL ACTIONS USING OR ACCESSING OUR SOFTWARE, INCLUDING THE ACTIONS OF ANYONE YOU ALLOW TO ACCESS TO YOUR ACCOUNT. YOU AFFIRM THAT YOU HAVE REACHED THE LEGAL AGE OF MAJORITY, UNDERSTAND AND ACCEPT THIS AGREEMENT (INCLUDING ITS DISPUTE RESOLUTION TERMS). IF YOU ARE UNDER THE LEGAL AGE OF MAJORITY, YOUR PARENT OR LEGAL GUARDIAN MUST CONSENT TO THIS AGREEMENT.

The EULA also contains an arbitration provision. Players are first notified regarding the existence of this provision at the beginning of the EULA, written in all caps:

> THIS AGREEMENT CONTAINS A BINDING INDIVIDUAL ARBITRATION AND CLASS ACTION WAIVER PROVISION IN THE 'BINDING INDIVIDUAL ARBITRATION' SECTION THAT AFFECTS YOUR RIGHTS UNDER THIS AGREEMENT WITH RESPECT TO ANY 'DISPUTE' (AS DEFINED BELOW) BETWEEN YOU AND THE COMPANY, AND REQUIRES YOU AND THE COMPANY TO RESOLVE DISPUTES IN BINDING, INDIVIDUAL ARBITRATION, AND NOT IN COURT.

The EULA's arbitration provision begins with a notification appearing in all caps which states: "PLEASE READ THIS SECTION CAREFULLY.  IT MAY SIGNIFICANTLY ALTER YOUR RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT."  The EULA then states, in relevant part, as follows:

> You and the Company agree that should any dispute, claim, or controversy arise between us regarding any Company products or services (hereafter a "Dispute"), whether based in contract, statute, regulation, ordinance, tort (including fraud, misrepresentation, fraudulent inducement, or negligence), or any other legal or equitable theory … and expressly including the validity, enforceability, or scope of this 'BINDING INDIVIDUAL ARBITRATION' section … shall be submitted to binding arbitration, as described below, rather than being resolved in court. The term "Dispute" is to be given the broadest possible meaning that will be enforced and includes, for example, all matters arising under this Agreement, the Privacy Policy, the Terms of Service, or any other agreement with the Company. You understand that there is no judge or jury in arbitration and that court review of an arbitration award is limited.

The EULA provides players with the opportunity to opt out of binding arbitration by providing notice within 30 days of acceptance of the EULA.  Johnson did not provide any such written notification to the Rockstar Defendants.

Plaintiffs do not dispute that Johnson began accessing Grand Theft Auto V on January 10, 2020.  Further, Johnson admits that as a minor, if he wanted to play a game or was playing a game and a screen popped up that required him to "click it" to keep playing he would click the box to keep playing.  The Rockstar Defendants' undisputed records reflect that someone using Johnson's Xbox account alias agreed to the terms of the EULA on January 10, 2020 when Johnson began accessing Grand Theft Auto V.  According to the Rockstar Defendants' records, since January 10, 2020 Johnson accessed Grand Theft Auto V's game mode in 2021 and 2023.

Plaintiffs challenge the Rockstar Defendants' motion to compel arbitration arguing that they do not have a valid, enforceable arbitration agreement with them. Additionally, even if an agreement existed, Plaintiffs argue that it would not be enforceable because the arbitration clause is unconscionable. Finally, Plaintiffs contend that this Court should consider their arguments regarding the enforceability of the arbitration provision because the delegation clause cannot apply until there is a finding of a valid, enforceable contract.

If there is an arbitration agreement governing the parties' dispute, it is governed by the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1 et seq. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including "the construction of the contract language itself." *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 836 (8th Cir. 2010) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Nevertheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, (1960)). "When deciding whether the parties agreed to arbitrate a certain matter ..., courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *Hudson v. ConAgra Poultry Co.*, 484 F.3d 496, 500 (8th Cir. 2007) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The court will apply Arkansas law to the question of whether a contract exists.

"[T]he essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation." *Alltel Corp. v. Sumner*, 203 S.W.3d 77, 79 (Ark. 2005). "A threshold inquiry is whether an agreement to arbitrate exists; that is, whether there has been mutual agreement, with

5

notice as to the terms and subsequent assent. We keep in mind two legal principles when deciding whether a valid contract was entered into: (1) a court cannot make a contract for the parties but can only construe and enforce the contract that they have made; and if there is no meeting of the minds, there is no contract; and (2) it is well settled that in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators." A*lltel Corp,* at 80 (citing *Williamson v. Sanofi Winthrop Pharm., Inc.*, 60 S.W.3d 428 (Ark. 2001).

The online contracts like the one at issue here are treated no differently than any other contract. *See, Leeper v. Altice U.S.A., Inc*, 722 F. Supp. 3d 893(W.D. Ark. 2024). Further, Courts applying Arkansas law routinely find "clickwrap" agreements valid and enforceable. *See Holley v. Bitesquad.com LLC*, 416 F. Supp. 3d 809, 821 & n.1 (E.D. Ark. 2019) ("A clickwrap agreement is an assent process where a user is required to click "I agree" before completing a purchase but is not required to actually view or scroll through the contract or terms and conditions.").  In Arkansas minors can enter into contracts and those agreements are "not void but voidable." *Haydon v. Hillhouse*, 270 S.W.2d 910, 911 (Ark. 1954).  Finally, competence is presumed and the burden of proving incompetence is with the Plaintiffs. *See Union Nat'l Bank of Little Rock v. Smith,* 240 Ark. 354, 356, 400 S.W.2d 652, 653 (1966) ("There is a presumption of law that every person is sane, fully competent, and capable of understanding the nature and effect of her contracts.").

When considering a motion to compel arbitration, "the district court treats the motion akin to a motion for summary judgment, viewing the record in the light most favorable to the nonmovant." *Duncan v. Int'l Markets Live, Inc.,* 20 F.4th 400, 403 (8th Cir. 2021).  The Court's "task in this case to determine whether [the parties] had an agreement to arbitrate and, if so, what that agreement covered." *See Foster v. Walmart, Inc.,* 15 F.4th 860, 862 (8th Cir.

2021). The FAA provides for a summary-trial procedure only where the existence of an arbitration agreement is factually disputed. 9 U.S.C. §4 (If the making of the arbitration agreement is in issue, "the court shall proceed summarily to the trial thereof."). Here the existence of the arbitration agreement is not factually disputed, there is no genuine issue of fact as to the making of the contract.

Plaintiffs do not dispute that Johnson began accessing Grand Theft Auto V on January 10, 2020. Further, Johnson admits that as a minor, if he wanted to play a game or was playing a game and a screen popped up that required him to "click it" to keep playing he would click the box to keep playing. Plaintiffs argue that the agreement is not valid because Johnson lacked the capacity and competency to manifest assent and Elizabeth Jones never assented to or accepted the EULA. Alternatively, they argue the contract is unconscionable. Because Johnson's contract is voidable, not void under Arkansas law, his infancy and alleged lack of competency do not nullify his agreement. Further, because of the EULA's broad delegation clause, the plaintiffs' contract enforceability challenges including Johnson's disaffirmation of the agreement go to an arbitrator. *See Rent-A-Center v. Jackson,* 561 U.S. 63 (2010). "The Supreme Court has made clear that 'unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.'" *Benchmark Ins. Co. v. SUNZ Ins. Co.,* 36 F.4th 766, 772 (8th Cir. 2022) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006)).

Plaintiff Elizabeth Jones is bound by the EULA under the doctrine of apparent authority. Johnson concedes that when faced with a screen that required him to "click-it" he would do so. Johnson agreed to the EULA which contained an arbitration agreement that covers this dispute and by agreeing to the EULA Johnson represented to the Rockstar

7

Defendants that his parent or legal guardian consented to the agreement. "Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing, such authority as he appears to have by reason of the actual authority which he has, such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess." *Terra Land Servs., Inc. v. McIntyre*, 2019 Ark. App. 118, 15, 572 S.W.3d 424, 433 (2019). Here, the Rockstar Defendants were justified in believing that the user of the account possessed the authority to agree to the EULA. There was no reason for the Rockstar Defendants to question whether the user of the account was anyone other than Johnson who was either over the age of majority or was acting with the consent of his parent or guardian. *See Heidbreder v. Epic Games, Inc.*, 438 F. Supp. 3rd 591(E.D.N.C. 2020) (finding no genuine issue of material fact as to the apparent authority of the minor child to bind his parent where the account was personalized and associated with specific names and e-mail addresses). *See also, B.D. v. Blizzard Ent.*, 76 Cal. App. 5th 931, 935(2022).

The Court finds that a valid arbitration agreement exists and that Plaintiffs' claims fall within the substantive scope of the arbitration agreement.

III.   Conclusion

For these reasons, the Court finds that the Rockstar Defendants' motion to compel arbitration must be granted. The case is stayed as to Plaintiffs' claims against the Rockstar Defendants pending the completion of arbitration.

IT IS SO ORDERED this 19th day of March, 2025.

_____
James M. Moody Jr.
United States District Judge